UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUSTIN FRANCIS STEVENS,

                Plaintiff,

v.                                     **DECISION AND ORDER**
                                                 12-CV-874S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.    Justin Stevens challenges the decision of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").

2.    Alleging disability due to mental illness beginning October 11, 2008, Stevens applied for Social Security benefits on June 1, 2009.[1] The Commissioner of Social Security ("Commissioner") denied that application, and as result, Stevens requested an administrative hearing. He received that hearing before ALJ Timothy M. McGuan on January 25, 2011. The ALJ considered the case *de novo*, and on February 16, 2011 issued a decision denying Stevens's application. Stevens filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action, challenging Defendant's final decision.[2]

3.    On April 16, 2014, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Stevens followed suit three days later. Briefing concluded in May of 2014, at which time this Court took the

---

[1] Stevens also applied for benefits in 2007, but he ultimately withdrew that application.

[2] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

motions under review.  For the following reasons, the Commissioner's motion is granted and Stevens's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of

Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

  6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

  7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

  8. In this case, the ALJ made the following findings: (1) Stevens has not

3

engaged in substantial gainful activity since his amended onset date (R. 15);[3] (2) Stevens suffers from bipolar disorder and a history of alcohol abuse, both severe impairments (R. 16); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) he retains the residual functional capacity ("RFC") to perform light work with some non-exertional restrictions, and he can perform past work as a tire buffer (R. 17, 24); and alternatively (5) there are other jobs that exist in significant numbers in the national economy – including a "packaging machine operator" – that he can make a successful adjustment to and that he can perform. (R. 24-25.) Ultimately, the ALJ concluded that Stevens was not under a disability, as defined by the Act, from his onset date through the date of the decision. (R. 25.)

9.   Stevens raises several objections to the ALJ's finding. Each that require discussion will be addressed below.

10.   Stevens first argues that the ALJ failed to classify his carpel tunnel syndrome as a "severe impairment" at Step 2. To support this argument, Stevens relies primarily on a report compiled before his onset date that suggests he still has numbness and will "occasionally drop things from his right hand." (R. 213.) But there is simply no merit to the argument that this constitutes a severe impairment. The ALJ correctly noted that:

> the claimant offered no complaints of carpal tunnel syndrome or of a similar impairment, either in documentary evidence or through testimony at the hearing. There are no follow up medical records after July 2003. The claimant's primary care physician did not mention carpal tunnel syndrome or any type of hand or wrist impairment in a medical report she submitted

---

[3]Citations to the underlying administrative record are designated "R."

with this claim.

(R. 19.)

11. In other words, there is no substantial evidence suggesting that his carpal tunnel syndrome significantly limits his capacity to perform basic work activities. See 20 C.F.R. § 404.1521(a); Social Security Ruling 85-28. Accordingly, the ALJ did not err at this step.

12. This Court also finds no error the ALJ's residual-functional-capacity assessment. The ALJ determined Stevens was capable of a full range of work with some non-exertional limitations. Social Security Ruling 96-8P instructs the ALJ to consider whether a claimiant suffering from mental impairments can "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." ALJ McGaun adequately complied with this directive.

13. He found that Stevens can only "occasionally understand, remember and carry out complex and detailed tasks and can only occasionally interact with others." (R. 18.) The ALJ relied primarily on Dr. Robert Hill, a consultive examiner, in making this determination. Dr. Hill, the only examining physician to render an opinion on Stevens' mental limitations in functioning, found that Stevens could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions and relate adequately with others. (R. 288.)

14. The ALJ properly incorporated these limitations into a hypothetical that he posed to the vocational expert, Jay Steinbrenner, who, consulting the Dictionary of

Occupational Titles, testified that a person with those limitations could perform both Stevens's former job as a tire buffer and other jobs that exist in sufficient numbers the national economy.

15.     Especially considering the lack of any opinion evidence to the contrary, the ALJ was entitled to rely on Dr. Hill's findings, which the ALJ found consistent with the objective medical evidence. See, e.g., Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995); Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) ("A written report of a consultative examiner can constitute substantial evidence.").

The "mental RFC" was therefore not "incomplete" as Stevens argues. (Pl.'s Br. at 12.) Rather, it adequately accounted for Stevens's mental limitations and contains no reversible error.

16.     The ALJ found Stevens to be "generally credible" and that "his impairments could reasonably be expected to cause the alleged symptoms." (R. 18.) "[H]owever," the ALJ continued, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] [RFC] assessment." (Id.) Stevens argues that this credibility assessment is not supported by substantial evidence. He argues repeatedly, but vaguely and unconvincingly, that the ALJ "did not apply the appropriate legal standards." (See, e.g., Pl.'s Br. at 14.)

17.     Although an ALJ must consider the claimant's testimony, he "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir.2010) (per curiam). Indeed, "the ALJ alone decides issues of credibility and this Court must give great deference to those

6

decisions, as the ALJ observed the witness's testimony and demeanor." Walker v. Astrue, No. 11-CV-766S, 2012 WL 4473249, at *5 (W.D.N.Y. Sept. 26, 2012) (citing Gernavage v. Shalala, 882 F.Supp. 1413, 1419 n. 6 (S.D.N.Y.1995); Serra v. Sullivan, 762 F.Supp. 1030, 1034 (W.D.N.Y.1991)). Applying that deferential standard, this Court finds no error in the ALJ's determination that the persistence and intensity of Stevens's symptoms were overstated and that he could perform the type of work outlined in the RFC.

18.     In the end, there can be no doubt that Stevens suffers from some degree of mental illness. All the medical evidence supports that conclusion. But that fact alone does not compel the conclusion that Stevens is too disabled to perform any work. Rather, the ALJ found that, indeed, Stevens retains the capacity to do some work, so long as certain conditions are met. This Court's task is to determine whether that decision is supported by substantial evidence and whether the ALJ committed any reversible errors in making that determination. Grey, 721 F.2d at 46. After a careful review of the record, this Court finds that it is and that he did not. Accordingly, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's motion seeking the same relief is denied.

\*\*\*\*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: June 22, 2014
 Buffalo, New York

                                        /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                                Chief Judge
                                     United States District Court